UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| RICHITA MARIE HACKFORD,<br><br>       Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR; INSPECTOR GENERAL, MARK LEE GREENBLAT; SECRETARY OF THE INTERIOR, DEB HAALAND; BUREAU OF INDIAN AFFAIRS; DARRYL LACOUNTE; THE BUREAU OF LAND MANAGEMENT; and TRACY STONE MANNING,<br><br>       Defendants. | **MEMORANDUM DECISION AND ORDER PERMITTING AMENDED COMPLAINT AND TEMPORARILY GRANTING MOTION TO WAIVE FILING FEE (DOC. NO. 2)**<br><br>Case No. 2:24-cv-00700<br><br>Magistrate Judge Daphne A. Oberg |

Richita Marie Hackford filed this action without an attorney and without paying the filing fee.[1]  The court temporarily granted Ms. Hackford's motion to proceed without paying the filing fee and stayed the case for screening.[2]  As explained below, because Ms. Hackford's complaint fails to state a plausible claim for relief, Ms. Hackford is permitted to file an amended complaint by **December 11, 2024**.  The court again temporarily grants the motion to waive the filing fee[3] pending screening of the amended complaint, if any is filed.

---

[1] (*See* Compl., Doc. No. 1; Mot. for Leave to Proceed Without Paying the Filing Fee, Doc. No. 2.)

[2] (*See* Order Temporarily Granting Mot. to Proceed Without Paying the Filing Fee and Notice of Screening Under 28 U.S.C. § 1915, Doc. No. 4.)

[3] (Doc. No. 2.)

LEGAL STANDARDS

When a court authorizes a party to proceed without paying a filing fee, it must dismiss the case if it determines the complaint "fails to state a claim on which relief may be granted."[4]  In making this determination, the court uses the standard for analyzing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[5]  To avoid dismissal under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face."[6]  The court accepts well-pleaded factual allegations as true and views the allegations in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor.[7]  But the court need not accept a plaintiff's conclusory allegations as true.[8]  "[A] plaintiff must offer specific factual allegations to support each claim."[9]

Because Ms. Hackford proceeds without an attorney (pro se), her filings are liberally construed and held "to a less stringent standard than formal pleadings drafted by lawyers."[10]  Still, pro se plaintiffs must "follow the same rules of procedure that

---

[4] 28 U.S.C. § 1915(e)(2)(B)(ii).

[5] *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007).

[6] *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

[7] *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013).

[8] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[9] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

[10] *Hall*, 935 F.2d at 1110.

govern other litigants."[11]  For instance, a pro se plaintiff "still has the burden of alleging sufficient facts on which a recognized legal claim could be based."[12]  While the court must make some allowances for a pro se plaintiff's "failure to cite proper legal authority, [her] confusion of various legal theories, [her] poor syntax and sentence construction, or [her] unfamiliarity with pleading requirements,"[13] the court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[14]

<u>SUMMARY OF COMPLAINT</u>

Ms. Hackford brings this action against the "United States Department of the Interior, Inspector General, Mark Lee Greenblat, Secretary of the Interior Deb Haaland, Bureau of Indian Affairs, Darryl Lacounte, and the Bureau of Land Management, Tracy Stone Manning."[15]  Ms. Hackford bases her claims on "'wrongful termination' under P.L. 671 Ute Partition Act of April 5, 1956 and the Termination Proclamation, 26 Fed. Reg. 8042 (August 26, 1961)."[16]  While Ms. Hackford's complaint is difficult to follow, the thrust of her argument seems to be that the United States government unlawfully

---

[11] *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (citation omitted).

[12] *Jenkins v. Currier*, 514 F.3d 1030, 1032 (10th Cir. 2008) (internal quotation marks omitted).

[13] *Hall*, 935 F.2d at 1110.

[14] *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (citation omitted).

[15] (Compl. 1, Doc. No 1.)  This list of defendants appears in the caption of Ms. Hackford's complaint.  However, as discussed below, due to Ms. Hackford's inconsistent filings, it is difficult to discern what parties she intends to sue.

[16] (*Id.* at 1–2.)

determined she is not a "Shoshone Utah Indian," which resulted in her being subjected to Utah state jurisdiction.[17]

Ms. Hackford provides an extensive list of the relief she seeks, including: five million dollars from the defendants; one hundred million dollars from "the Mormon corporate headquarters" and the Utah state government; "clear title" to three houses "unlawfully taken from Plaintiff under state court evictions"; "the current market value of all three homes as restitution for the years of deprivation and denying the Plaintiff the use of said homes"; "an 'Audit' [and] a 'Full and Final Accounting'" to be conducted by Defendants detailing "all 'assets' unlawfully being utilized and or unlawfully taken and removed from said Reservation outlined above"; and removal of "the fraudulent 'Ute Indian tribe' of the fraudulent Uintah and Ouray Reservation and any other Ute alleged federal reservations from the Federal Register."[18]

Where Ms. Hackford fails to state a claim over which this court has jurisdiction, she will be given an opportunity to amend her complaint.

<u>ANALYSIS</u>

As an initial matter, Ms. Hackford fails to adequately identify who she intends to sue and in what capacity. The caption of her complaint lists as defendants: "United

---

[17] (*See id.* at 14.) Ms. Hackford's complaint also contains a lengthy historical account of the relationship between the United States government and several Native American tribes, and nine exhibits consisting of historical documents. (*See id.* at 3–14.) Because Ms. Hackford's pleadings are liberally construed, and attachments to a complaint may be considered in determining whether it states a plausible claim for relief, all these documents are considered in evaluating the sufficiency of Ms. Hackford's claims. *See Smith*, 561 F.3d at 1098 ("In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference." (citation omitted)).

[18] (Compl. 15–18, Doc. No. 1.)

States Department of the Interior, Inspector General, Mark Lee Greenblat, Secretary of the Interior Deb Haaland, the Bureau of Indian Affairs, Darryl Lacounte, and the Bureau of Land Management, Tracy Stone Manning."[19]  But in the introductory section of her complaint, Ms. Hackford states she "[b]rings this action against the United States Department of the Interior Inspector General, the Secretary of the Interior, the Bureau of Indian Affairs and the Bureau of Land Management."[20]  Meanwhile, Ms. Hackford's "Certificate of Mailing" lists only the individual officers as defendants, not the agencies.[21] Finally, Ms. Hackford's civil cover sheet lists "U.S. Department of the Interior, Mark Lee Greenblat, Inspector General" as the defendants.[22]  And in the body of her complaint, Ms. Hackford fails to clarify who she intends to sue or in what capacity—instead, Ms. Hackford mostly refers collectively to "the defendants."[23]  For this reason alone, Ms. Hackford's complaint fails to state a cognizable claim.[24]

Even if Ms. Hackford had clearly identified who she intends to sue, she still fails to state a plausible claim against any defendants named in her filings.  As noted above, Ms. Hackford "[b]rings this action against the [defendants] for deprivations and injuries

---

[19] (*Id.* at 1.)

[20] (*Id.* at 1–2.)

[21] (*See id.* at 20.)

[22] (*See* Corrected Civ. Cover Sheet, Doc. No. 1-4 at 2.)

[23] (*See* Compl. 7, 10, 13–19, Doc. No. 1.)

[24] *See Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). ("[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated.").

suffered as a direct result of Plaintiff's 'wrongful termination' under P.L. 671 Ute Partition Act of April 5, 1956 and the Termination Proclamation, 26 Fed. Reg. 8042 (August 26, 1961)."[25]  According to Ms. Hackford, the defendants "fraudulently listed [her] on the Federal Register's Mixed-blood Ute Roll as an alleged mixed-blood 'Uintah' implying Plaintiff is a Uintah Yampah State Ute citizen, a band of Whiteriver Utes, when indeed Plaintiff is a Shoshone Utah Indian."[26]

Enacted in 1954, the Ute Partition Act[27] ("UPA") provided for the termination of the United States government's "supervision" of the assets of the Ute Indian Tribe of the Uintah and Ouray Reservation in Utah.  More specifically, section 1 of the UPA describes its objectives as follows:

> The purpose of [the UPA] is to provide for the partition and distribution of the assets of the Ute Indian Tribe of the Uintah and Ouray Reservation in Utah between the mixed-blood [("terminated")] and full-blood [("enrolled")] members thereof; for the termination of Federal supervision over the trust, and restricted property, of the [terminated] members of said tribe; and for a development program for the [enrolled] members thereof, to assist them in preparing for termination of Federal supervision over their property."[28]

---

[25] (Compl. 1–2, Doc. No. 1.)

[26] (*Id.* at 14.)

[27] Pub. L. No. 83-671, 68 Stat. 868–78 (1954) (codified at 25 U.S.C. § 677–677aa). While the UPA has not been repealed, the current version of the United States Code contains a note from the United States Government Publishing Office stating the UPA's sections are "omitted from the Code as being of special and not general application." *See* 25 U.S.C. §§ 677–677aa.  Accordingly, this order cites to the UPA as codified in the 2016 version of the United States Code—the most recent edition where the UPA is included.

[28] 25 U.S.C. § 677.  The terms "mixed-blood" and "full-blood" are archaic and offensive. *Cf. Affiliated Ute Citizens v. United States*, 406 U.S. 128, 133 n.1 (1972).  They are used here only in limited direct quotes from the UPA and Ms. Hackford.  In all other contexts, the terms "terminated member" and "enrolled member" are used instead.

The first step in distributing the tribe's assets was determining membership of the tribe. Under Section 8 of the UPA, the tribe was to "prepare and submit to the Secretary [of the Interior] a proposed roll of [enrolled] members of the tribe, and a proposed roll of [terminated] members of the tribe," to be "published in the Federal Register."[29] The UPA provided that "[a]ny person claiming membership rights in the tribe, or an interest in its assets . . . may file an appeal with the Secretary contesting the inclusion or omission of the name of any person on or from either of such proposed rolls."[30] Such appeals must be filed "within sixty days from the date of publication [of the proposed rolls] in the Federal Register."[31]

The proposed membership rolls were published in the Federal Register on February 1, 1955,[32] meaning any appeal contesting inclusion or omission from the rolls had to be filed by April 4, 1955.[33] After all appeals were resolved, the final membership rolls were published in the Federal Register on April 5, 1956, and asset distribution began.[34] Pursuant to Section 23 of the UPA, after all terminated members received

---

[29] 25 U.S.C. § 677g.

[30] *Id.*

[31] *Id.*; *see also* 25 U.S.C. § 677d ("Effective on the date of publication of the final rolls as provided in section 677g of this title the tribe shall thereafter consist exclusively of full-blood members. . . . . New membership in the tribe shall thereafter be controlled and determined by the constitution and bylaws of the tribe and ordinances enacted thereunder.").

[32] *See* 20 Fed. Reg. 708–18 (Feb. 1, 1955).

[33] April 2, 1955 was a Saturday—the next business day was Monday, April 4, 1955.

[34] *See* 21 Fed. Reg. 2208–20 (Apr. 5, 1956). Ms. Hackford appears on the final roll of terminated members. *See id.* at 2209 (listing "Hackford, Richita Marie").

their distribution, the Secretary of the Interior issued a "Termination Proclamation," ending the United States government's "trust relationship" with terminated members of the tribe.[35]  Once this proclamation issued, terminated members were no longer subject to "statutes of the United States which affect Indians because of their status as Indians . . . and the laws of the several States shall apply to such member in the same manner as they apply to other citizens within their jurisdiction."[36]

As noted above, Ms. Hackford cites the UPA and the Termination Proclamation as the basis of her wrongful termination claim.[37]  Ms. Hackford seems to contend she should have been recognized as a Shoshone Utah tribal member rather than listed on the final rolls as a terminated Ute tribal member—and by listing her incorrectly, the defendants "wrongfully terminated" her tribal membership.[38]  But under the UPA, Ms. Hackford was required to appeal her membership determination to the Secretary of the Interior by April 4, 1955.[39]  Ms. Hackford does not allege she made such an appeal. Further, Ms. Hackford appears on the final terminated member roll published in the

---

[35] *See* 26 Fed. Reg. 8042 (Aug. 26, 1961); 25 U.S.C. § 677v.

[36] 25 U.S.C. § 677v.

[37] (*See* Comp. 1–2, Doc. No. 1.)

[38] (*See id.* at 14 (arguing Ms. Hackford was "fraudulently listed on the Federal Register's roll as an alleged terminated member 'Uintah' implying Plaintiff is a Uintah Yampah State Ute citizen, a band of Whiteriver Utes, when indeed Plaintiff is a Shoshone Utah Indian").)

[39] *See Hackford v. Utah*, 827 F. App'x 808, 811–12 (10th Cir. 2020) (unpublished) ("To repeat, once the Secretary of the Interior made certain publications in the Federal Register (which he did in 1956 and 1961), an individual identified in the Federal Register as a 'mixed-blood' Ute [becomes] . . . subject to 'the laws of the several States . . . in the same manner as [those laws] apply to other citizens within [the States'] jurisdiction.'" (last three alternations in original) (quoting 25 U.S.C. § 677v)).

Federal Register—meaning even if she did file an appeal, the Secretary disposed of such appeal.[40]  After the final roll was published, the tribe's constitution and bylaws controlled new tribal membership.[41]

To the extent Ms. Hackford claims she was listed on the terminated member roll "without an express authorization from the Congress of the United States,"[42] it is unclear what legal cause of action Ms. Hackford is attempting to invoke.  Regardless, she is incorrect: the UPA (which was passed by Congress) directed the tribe to submit the proposed rolls to the Secretary of the Interior, to be published in the Federal Register.[43] The UPA further required the Secretary to review any appeals regarding inclusion or omission of individuals on the rolls—and after resolution of such appeals, the completed rolls were to be published as final rolls in the Federal Register.[44]  In other words, the process was authorized by Congress.[45]

---

[40] *See* 21 Fed. Reg. 2208–09 (Apr. 5, 1956) (listing "Hackford, Richita Marie" on the final roll of terminated members and stating "[d]isposition has been made of all appeals to the Secretary contesting the inclusion or omission of the name of any person on or from the proposed rolls as published in the Federal Register of February 2, 1955"); *see also* 25 U.S.C. § 677g (providing the Secretary's decisions regarding such appeals "shall be final and conclusive").

[41] 25 U.S.C. § 677d.

[42] (Compl. 2, Doc. No. 1.)

[43] *See* 25 U.S.C. § 677g.

[44] *See id.*

[45] It does not appear Ms. Hackford seeks to bring an employment claim, despite her use of the term "wrongful termination."  To the extent she seeks to bring a traditional wrongful termination tort claim or a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, she does not allege she was employed by any of the defendants.  *See Touchard v. La-Z-Boy, Inc.*, 2006 UT 71, ¶ 28, 148 P.3d 945 (noting a wrongful termination claim requires a plaintiff to establish, among other things, that her

Because Ms. Hackford fails to state a cognizable claim, her complaint is subject to dismissal.[46]  Nevertheless, "[d]ismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts [she] has alleged and it would be futile to give [her] an opportunity to amend."[47]  Accordingly, Ms. Hackford will be given an opportunity to amend her complaint, as outlined below.

<u>CONCLUSION</u>

1.    Ms. Hackford may file an amended complaint by **December 11, 2024**. The words "Amended Complaint" should appear in the caption of the document.

2.    Ms. Hackford is advised that an amended complaint will completely replace all prior versions of the complaint.  Claims which are not realleged in the amended complaint will be deemed abandoned.[48]

3.    Once filed, the court will screen the amended complaint under 28 U.S.C. § 1915(e) and Rule DUCivR 3-2(b) of the Local Rules of Civil Practice.[49]

---

employer terminated her); *Knitter v. Corvias Mil. Living, LLC*, 758 F.3d 1214, 1225 (10th Cir. 2014) (noting Title VII prohibits discrimination by an "employer") (quoting 42 U.S.C. § 2000e-7 2(a)(1)).

[46] *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

[47] *Kay*, 500 F.3d at 1217 (internal quotation marks omitted).

[48] *See Pierce v. Williams*, No. CIV 20-284, 2020 U.S. Dist. LEXIS 185074, at *6 (E.D. Okla. Oct. 6, 2020) (unpublished) ("An amended complaint completely replaces the original complaint and renders the original complaint of no legal effect." (citing *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991))).

[49] *See* DUCivR 3-2(b), available at https://www.utd.uscourts.gov/sites/utd/files/Civil%20Rules%20Final%202023.pdf [https://perma.cc/YJY4-VSML].

4.      Other than an amended complaint, the restriction on filing other documents set forth in the court's September 24, 2024 order[50] remains in place.

5.      Failure to file an amended complaint may result in dismissal of this action.

DATED this 20th day of November, 2024.

BY THE COURT:

_Daphne A. Oberg_

Daphne A. Oberg
United States Magistrate Judge

---

[50] (Doc. No. 4.)