UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| RICHITA MARIE HACKFORD,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR; INSPECTOR GENERAL, MARK LEE GREENBLAT; SECRETARY OF THE INTERIOR DEB HAALAND; BUREAU OF INDIAN AFFAIRS, DARRYL LACOUNTE; and THE BUREAU OF LAND MANAGEMENT, TRACY STONE MANNING,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO WAIVE FILING FEE (DOC. NO. 2) AND DISMISSING ACTION PURSUANT TO 28 U.S.C. § 1915**<br><br>Case No. 2:24-cv-00700<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Richita Marie Hackford filed this action without an attorney and without paying a filing fee.[1] The court temporarily granted Ms. Hackford's motion to waive the filing fee and stayed the case for screening.[2] After screening Ms. Hackford's complaint under 28 U.S.C. § 1915(e)(2)(B) and identifying deficiencies, the court invited Ms. Hackford to file an amended complaint.[3] Ms. Hackford filed an amended complaint on

---

[1] (*See* Compl., Doc. No. 1; Mot. for Leave to Proceed Without Paying the Filing Fee, Doc. No. 2.)

[2] (*See* Order Temp. Granting Mot. to Waive Filing Fee and Notice of Screening Under 28 U.S.C. § 1915, Doc. No. 4.)

[3] (*See* Mem. Decision and Order Permitting Am. Compl. and Temp. Granting Mot. to Waive Filing Fee, Doc. No. 6.)

1

December 3, 2025.[4] Having reviewed the amended complaint, the court[5] ORDERS as follows:

    1.    Ms. Hackford's motion to waive the filing fee[6] is GRANTED.

    2.    Because Ms. Hackford's amended complaint fails to state a plausible claim for relief, and further opportunities to amend would be futile, this action is DISMISSED without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## LEGAL STANDARDS

When a court authorizes a party to proceed without paying a filing fee, it must dismiss the case if it determines the complaint "fails to state a claim on which relief may be granted."[7] In making this determination, the court uses the standard for analyzing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[8] To avoid dismissal under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face."[9] The court accepts well-pleaded factual allegations as true and views the allegations in the light most

---

[4] (*See* Am. Compl., Doc. No. 9-2.)

[5] Ms. Hackford consents to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c), Rule 73 of the Federal Rules of Civil Procedure, and the District of Utah's General Order 20-034. (*See* Doc. No. 5.)

[6] (Doc. No. 2.)

[7] 28 U.S.C. § 1915(e)(2)(B)(ii).

[8] *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007).

[9] *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor.[10]  But the court need not accept the plaintiff's conclusory allegations as true.[11]  "[A] plaintiff must offer specific factual allegations to support each claim."[12]

Because Ms. Hackford proceeds without an attorney (pro se), her filings are liberally construed and held "to a less stringent standard than formal pleadings drafted by lawyers."[13]  Still, pro se plaintiffs must "follow the same rules of procedure that govern other litigants."[14]  For instance, a pro se plaintiff "still has the burden of alleging sufficient facts on which a recognized legal claim could be based."[15]  While a court must make some allowances for a pro se plaintiff's "failure to cite proper legal authority, [her] confusion of various legal theories, [her] poor syntax and sentence construction, or [her] unfamiliarity with pleading requirements,"[16] courts "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[17]

---

[10] *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013).

[11] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[12] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

[13] *Hall*, 935 F.2d at 1110.

[14] *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (citation omitted).

[15] *Jenkins v. Currier*, 514 F.3d 1030, 1032 (10th Cir. 2008) (internal quotation marks omitted).

[16] *Hall*, 935 F.2d at 1110.

[17] *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (citation omitted).

## ANALYSIS

In her original complaint, Ms. Hackford argued the United States government unlawfully determined she is not a "Shoshone Utah Indian," which resulted in her being subjected to Utah state jurisdiction.[18] Although Ms. Hackford's amended complaint is difficult to follow, she appears to assert the same claims—she states she is "primarily seeking from the court the legal acknowledgment and ruling upholding my true, legal 'race' a Shoshone Utah Indian."[19]

Ms. Hackford's claims relate to the Ute Partition Act ("UPA").[20] Enacted in 1954, the UPA provided for the termination of the United States government's "supervision" of the assets of the Ute Indian Tribe of the Uintah and Ouray Reservation in Utah.[21] More specifically, section 1 of the UPA describes its objectives as follows:

> The purpose of [the UPA] is to provide for the partition and distribution of the assets of the Ute Indian Tribe of the Uintah and Ouray Reservation in Utah between the mixed-blood [("terminated")] and full-blood [("enrolled")]

---

[18] (*See* Compl. 1–2, Doc. No. 1; *see also* Mem. Decision and Order Permitting Am. Compl. and Temp. Granting Mot. to Waive Filing Fee 3–4, Doc. No. 6 (summarizing Ms. Hackford's original complaint).)

[19] (Am. Compl. 12, Doc. No. 9-2; *see also id.* at 4 (arguing the court "must determine that the defendants did unlawfully change [Ms. Hackford's] 'race' from a Shoshone Utah Indian, [which caused her to be] unlawfully placed under Utah State law").)

[20] Pub. L. No. 83-671, 68 Stat. 868–78 (1954) (codified at 25 U.S.C. §§ 677–677aa); (*see also* Am. Compl. 2–3, Doc. No. 9-1 (citing the UPA)).  While the UPA has not been repealed, the current version of the United States Code contains a note from the United States Government Publishing Office stating the UPA's sections are "omitted from the Code as being of special and not general application."  *See* 25 U.S.C. §§ 677–677aa. Accordingly, this order cites to the UPA as codified in the 2016 version of the United States Code—the most recent edition where the UPA is included.

[21] 25 U.S.C. § 677.

members thereof; for the termination of Federal supervision over the trust, and restricted property, of the [terminated] members of said tribe; and for a development program for the [enrolled] members thereof, to assist them in preparing for termination of Federal supervision over their property.[22]

The first step in distributing the tribe's assets was determining membership of the tribe.  Under Section 8 of the UPA, the tribe was to "prepare and submit to the Secretary [of the Interior] a proposed roll of [enrolled] members of the tribe, and a proposed roll of [terminated] members of the tribe," to be "published in the Federal Register."[23]  The UPA provided that "[a]ny person claiming membership rights in the tribe, or an interest in its assets . . . may file an appeal with the Secretary contesting the inclusion or omission of the name of any person on or from either of such proposed rolls."[24]  Such appeals must be filed "within sixty days from the date of publication [of the proposed rolls] in the Federal Register."[25]

The proposed membership rolls were published in the Federal Register on February 1, 1955,[26] meaning any appeal contesting inclusion or omission from the rolls

---

[22] *Id.*  The terms "mixed-blood" and "full-blood" are archaic and offensive.  *Cf. Affiliated Ute Citizens v. United States*, 406 U.S. 128, 133 n.1 (1972).  They are used here only in limited direct quotes from the UPA and Ms. Hackford.  In all other contexts, the terms "terminated member" and "enrolled member" are used instead.

[23] 25 U.S.C. § 677g.

[24] *Id.*

[25] *Id.*; *see also id.* § 677d ("Effective on the date of publication of the final rolls as provided in section 677g of this title the tribe shall thereafter consist exclusively of [enrolled] members. . . . New membership in the tribe shall thereafter be controlled and determined by the constitution and bylaws of the tribe and ordinances enacted thereunder.").

[26] *See* 20 Fed. Reg. 708–18 (Feb. 1, 1955).

had to be filed by April 4, 1955.[27]  After all appeals were resolved, the final membership rolls were published in the Federal Register on April 5, 1956, and asset distribution began.[28]  Pursuant to Section 23 of the UPA, after all terminated members received their distribution, the Secretary of the Interior issued a "Termination Proclamation," ending the United States government's "trust relationship" with terminated members of the tribe.[29]  Once this proclamation issued, terminated members were no longer subject to "statutes of the United States which affect Indians because of their status as Indians . . . and the laws of the several States [would] apply to such member in the same manner as they apply to other citizens within their jurisdiction."[30]

Ms. Hackford seems to contend she should have been recognized as a Shoshone Utah tribal member rather than listed on the final rolls as a terminated Ute tribal member—and by listing her incorrectly, the defendants unlawfully subjected her to Utah state jurisdiction.[31]  But under the UPA, Ms. Hackford was required to appeal her

---

[27] April 2, 1955 was a Saturday—the next business day was Monday, April 4, 1955.

[28] *See* 21 Fed. Reg. 2208–20 (Apr. 5, 1956).  Ms. Hackford appears on the final roll of terminated members.  *See id.* at 2209 (listing "Hackford, Richita Marie").

[29] *See* 26 Fed. Reg. 8042 (Aug. 26, 1961); 25 U.S.C. § 677v.

[30] 25 U.S.C. § 677v.

[31] (*See* Am. Compl. 4, Doc. No. 9-2 (arguing the court "must determine that the defendants did unlawfully change [Ms. Hackford's] 'race' from a Shoshone Utah Indian, to an alleged '[terminated] Uintah Ute' as placed on the final [terminated] Ute Roll, and again changed [Ms. Hackford's] 'race' under this fraudulent scheme under a false allegation as a 'non-Indian' a white Caucasian unlawfully placed under Utah State law").)

membership determination to the Secretary of the Interior by April 4, 1955.[32] Ms. Hackford does not allege she made such an appeal. Further, Ms. Hackford appears on the final terminated member roll published in the Federal Register—meaning even if she did file an appeal, the Secretary disposed of such appeal.[33] After the final roll was published, the tribe's constitution and bylaws controlled new tribal membership.[34]

Ms. Hackford also claims the United States government "violated and breached the U.S. Senate Act [of] May 5, 1864 (13 Stat. 63)" by listing her in the Federal Register as a terminated member.[35] The Act of May 5, 1864 created the Uintah Valley

---

[32] See Hackford v. Utah, 827 F. App'x 808, 811–12 (10th Cir. 2020) (unpublished) ("To repeat, once the Secretary of the Interior made certain publications in the Federal Register (which he did in 1956 and 1961), an individual identified in the Federal Register as a 'mixed-blood' Ute [becomes] . . . subject to 'the laws of the several States . . . in the same manner as [those laws] apply to other citizens within [the States'] jurisdiction.'" (last three alternations in original) (quoting 25 U.S.C. § 677v)).

[33] See 21 Fed. Reg. 2208–09 (Apr. 5, 1956) (listing "Hackford, Richita Marie" on the final roll of terminated members and stating "[d]isposition has been made of all appeals to the Secretary contesting the inclusion or omission of the name of any person on or from the proposed rolls as published in the Federal Register of February 2, 1955"); see also 25 U.S.C. § 677g (providing the Secretary's decisions regarding such appeals "shall be final and conclusive").

[34] 25 U.S.C. § 677d.

[35] (See Am. Compl. 5, Doc. No. 9-2.)

Reservation.[36] But it did not create a private cause of action,[37] and as described above, Congress authorized the membership roll process.

Because Ms. Hackford fails to state any cognizable claim, this action must be dismissed.[38] "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts [she] has alleged and it would be futile to give [her] an opportunity to amend."[39] The court previously identified the deficiencies described above and permitted Ms. Hackford to amend her complaint,[40] but the amended complaint fails to correct the deficiencies. Therefore, further opportunities to amend would be futile, and dismissal is necessary.

## CONCLUSION

Ms. Hackford's motion to proceed without paying the filing fee[41] is GRANTED. Because Ms. Hackford's amended complaint fails to state a plausible claim for relief,

---

[36] *See* Act of May 5, 1864, ch. 77, 13 Stat. 63; *see also Hackford v. United States*, No. 2:23-cv-00618, 2024 U.S. Dist. LEXIS 114843, at *15 (D. Utah June 28, 2024) (unpublished) (explaining the Act of May 5, 1864 created the Uintah Valley Reservation).

[37] *See Hackford v. United States*, 2024 U.S. Dist. LEXIS 114843, at *15 (finding "Ms. Hackford cannot state a plausible claim for relief under" the Act of May 5, 1864, because it did not "create[] a cause of action or mention[] judicial review").

[38] *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

[39] *Kay*, 500 F.3d at 1217 (citation omitted).

[40] (*See* Mem. Decision and Order Permitting Am. Compl. and Temp. Granting Mot. to Waive Filing Fee, Doc. No. 6.)

[41] (Doc. No. 2.)

and further opportunities to amend would be futile, this action is DISMISSED without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[42]

DATED this 22nd day of April, 2025.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge

---

[42] Because this case is dismissed, nonparty Edson Gardner's motions to intervene and to file a third-party complaint (Doc. Nos. 7, 10) are denied as moot.